1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                               AT TACOMA

10   ANGELA N. WHITEMAN,

11                      Plaintiff,                    CASE NO. 13-cv-05429 JRC

12          v.                                        ORDER ON PLAINTIFF'S
                                                      COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,
15
                        Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

20   States Magistrate Judge, ECF No. 6). Plaintiff has filed an Opening Brief, to which

21   defendant has filed a Responsive Brief (*see* ECF Nos. 16, 17).

22          After reviewing the record, the Court finds that the ALJ properly discounted

23
24   plaintiff's credibility because of inconsistency of plaintiff's testimony with the objective

ORDER ON PLAINTIFF'S COMPLAINT - 1

medical evidence, as well as plaintiff's drug seeking behavior. The ALJ also did not err by relying on the opinion of an examining physician over the opinion from non-examining physicians.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, ANGELA N. WHITEMAN, was born in 1978 and was 30 years old on the alleged date of disability onset of May 8, 2009 (*see* Tr. 204). Plaintiff graduated from high school (Tr. 37, 54), and has worked in fast food restaurants, convenience stores and as a caregiver (Tr. 58-60). Plaintiff last worked managing a gas station in 2008.  She was terminated when the corporation owning the station "went in another direction" (Tr. 38).

Plaintiff has at least the severe impairments of "right lower extremity nerve injury with ankle and foot weakness, history of clotting disorder, low back and hip abnormalities due to motor vehicle collision and fractures, obesity, alcohol abuse in full sustained remission, methamphetamine dependence in full sustained remission, and marijuana dependence (20 CFR 404.1520(c) and 416.920(c))" (Tr. 14).

<u>PROCEDURAL HISTORY</u>

On July 29, 2009, plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382a (Title XVI) of the Social Security Act (*see* Tr. 197-200, 201-03).  Plaintiff's claims were denied (Tr. 118-21) and plaintiff did not appeal this decision.

1   Plaintiff filed new claims for DIB and SSI on September 1, 2010 (Tr. 204-07, 208-

2   11).  The applications were denied initially and following reconsideration (Tr. 124-27,

3   134-35, 139-41). Plaintiff's requested hearing was held before Administrative Law Judge

4   David Johnson ("the ALJ") on May 3, 2012 (*see* Tr. 31-69). On May 31, 2012, the ALJ

5   issued a written decision in which he concluded that plaintiff was not disabled pursuant to

6   the Social Security Act (*see* Tr. 9-24).

7   On April 11, 2013, the Appeals Council denied plaintiff's request for review,

8   making the written decision by the ALJ the final agency decision subject to judicial

9   review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

10   seeking judicial review of the ALJ's written decision in June 2013 (*see* ECF Nos. 1, 3).

11   Defendant filed the sealed administrative record regarding this matter ("Tr.") on October

12   1, 2013 (*see* ECF Nos. 10, 11).

13   In plaintiff's Opening Brief, plaintiff asserts that the ALJ: (1) erred in adopting the

14   findings of Dr. Rosenberg, which were contrary to the evidence in the record, while

15   rejecting the opinions of the non-examining physicians who had considered the residual

16   effects of plaintiff's trauma on her functioning; and (2) erred in finding that plaintiff's

17   allegations were not fully credible (*see* ECF No. 16, p. 1). The Court will discuss these

18   issues in reverse order.

19   STANDARD OF REVIEW

20   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

21   denial of social security benefits if the ALJ's findings are based on legal error or not

22   supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**(1) Did the ALJ err in finding that plaintiff's allegations were not fully credible?**

Plaintiff complains that the ALJ's analysis of plaintiff's credibility was faulty for a number of reasons -- because the ALJ's discussion of the objective medical evidence did not support his credibility finding; the record did not contain evidence of drug-seeking behavior; plaintiff's substance use does not undermine the credibility of her pain reports; the ALJ erred in finding that plaintiff's vacations suggested that her allegations were overstated; and, that there was no inconsistency between her activities of daily living and her other testimony (*see* Opening Brief, ECF No. 16, pp. 6-14). Defendant contends that even if the ALJ erred in relying on a particular factor, as long as other valid credibility findings support the ALJ's finding, such credibility finding should be upheld (*see* Response, ECF No. 17, p. 13 (*citing Batson v. Comm'r,* 359 F.3d 1190, 1197 (9th Cir. 2004)).

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. §

423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

The ALJ specified what evidence undermined plaintiff's complaints in that he inferred that plaintiff's drug seeking behavior indicated that plaintiff was exaggerating her symptoms, such as pain, in order to obtain narcotic drugs (*see* Tr. 21). The ALJ also relied on an inconsistency between the degree of impairment alleged and the objective medical evidence when failing to credit fully plaintiff's allegations.

Regarding drug seeking behavior, the ALJ included the following discussion in his written decision:

> The treatment record shows that the claimant engaged in some drug seeking behavior, which undermines her credibility. Treatment notes from Elma Family Medicine show that the claimant was no longer prescribed narcotic medication because a urine toxicology screen was positive for methadone and she was prescribed morphine. The claimant admitted that she traded medicines with another patient (internal citation to 11F/1-3). The claimant limited herself in terms of the amount of treatment she could get to make her more functional. In a December 2010 treatment note from Mark Reed Healthcare Clinic the claimant stated that she was only interested in narcotic pain medication and she was not interested in other treatment modalities (internal citation to 13F/1-2). Additionally, January of 2011 through March of 2012 treatment notes from Nurse Biggerstaff show that the claimant complained of chronic pain and requested stronger medication (internal citation to 19F). However, Nurse Biggerstaff made it clear that she would not prescribe the claimant anything stronger than Vicodin (internal citation to 19F/28).

(Tr. 21).

The record supports the ALJ's analysis. For example, on August 22, 2010, Dr. Shawn M. Andrews indicated that when he visited with plaintiff, "at the time of her daughter's appointment she admitted that she had essentially traded medicines with another patient," (*see* Tr. 759). On September 29, 2010, Dr. Andrews indicated that plaintiff "will no longer be given her narcotic agonists because of her urine drug screen issue," and assessed her with "chronic pain, history of misallocated of narcotics," among other things (Tr. 757). Plaintiff contends that the ALJ erred in relying on this factor when assessing plaintiff's credibility because the "objective evidence documents that plaintiff was not taking her medications **in addition to** other medications, which would suggest drug-seeking behavior" (*see* Opening Brief, ECF No. 16, pp. 9-10). However, based on the relevant record, the Court concludes that plaintiff's admission of trading medications

1   with another patient, supported by her toxicology screen, provides substantial evidence

2   for the ALJ's interpretation and reliance on this factor.

3        The Court also notes the treatment record from Nurse Mary Biggerstaff, ARNP

4   from December 15, 2010 (*see* Tr. 790-91). Nurse Biggerstaff indicates plaintiff's

5   complaint that she "feels like she has no quality of life without narcotics to control her

6   pain" (*see* Tr. 790). Nurse Biggerstaff discussed with plaintiff why she was "not willing

7   to restart her morphine  .  .  .  .  [and] attempted to discuss other modalities to deal with

8   chronic pain, but [plaintiff] is not interested" (*see* Tr. 791).

9        Based on the relevant record, and for the reasons discussed, the Court concludes

10  that the ALJ's finding that plaintiff was engaged in drug-seeking behavior and his

11  inference that plaintiff was exaggerating her pain reports in an attempt to receive narcotic

12  pain medication are supported by substantial evidence in the record as a whole. *See*

13  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868

14  F.2d 323, 325-26 (9th Cir. 1989)) ("Substantial evidence" is more than a scintilla, less

15  than a preponderance, and is such "'relevant evidence as a reasonable mind might accept

16  as adequate to support a conclusion'").

17       The ALJ also properly relied on the finding that the objective medical findings are

18  not consistent with the degree of impairment alleged by the [plaintiff]" (*see* Tr. 18; *see*

19  *also* Tr. 18-20). The ALJ first discussed plaintiff's May 8, 2009 emergency room

20  presentation, following her motor vehicle accident in which she was a passenger and was

21  ejected from the vehicle (*see* Tr. 18 (*citing* 1F)). He noted her bladder rupture; pelvic

22  fractures, hemorrhaging and surgeries to repair her bladder rupture; several pelvic

fractures; and a surgery to remove blood clots from her right lower extremity (*id.* (*citing* 1F/36, 41-44; 2F/15-25)). The ALJ noted that after being discharged with activity restrictions, "namely, non-weight bearing to the bilateral lower extremities," that plaintiff was transferred to a nursing home for ongoing treatment and progressive therapy (Tr. 19).

The ALJ noted plaintiff's gradual improvement from July, 2009 through August, 2009 (*id.*). For example, the ALJ noted that plaintiff was instructed by Dr. James Krieg, M.D., following examination on August 19, 2009, "to begin weight bearing in her bilateral lower extremities" (*id.* (*citing* 10F/25)). After beginning physical therapy, as found by the ALJ, plaintiff "continued to improve with physical therapy and [with] her right Ankle Foot Orthosis (AFO)" (*id.* (*citing* 11F)).

Additionally, the ALJ included the following discussion in his written decision:

> On October 12, 2009, Dr. Andrews noted that with physical therapy and AFO the claimant was getting more dorsiflexion at the right ankle (internal citation to 11F/14). The claimant reported that she was using a walker more and getting stronger with physical therapy (internal citation to 11F/14). In an October 26, 2009, office visit with Dr. Andrews the claimant reported that she had some numbness in her right ankle but she was walking more, getting more dorsiflexion in her right ankle, and her edema was decreasing significantly (internal citation to 11F/13). In December of 2009, Dr. Andrews noted that the claimant was doing well, increased her mobility and continuing to wean her narcotics (internal citation to 11F/10). On March 1, 2010, the claimant returned to Dr. Andrews for a follow up ((internal citation to 11F/6). The claimant reported that she was complete out of the walker and the wheelchair. A month later, the claimant went to Dr. Andrews reporting increasing stamina (internal citation to 11F/5). She reported that she was going to the YMCA once weekly and that she was out of her AFO a lot of the time. On examination, the claimant was able to voluntarily dorsiflex to neutral position without an AFO.
>
> On April 7, 2010, the claimant returned to Harborview Orthopedic for a follow-up (internal citation to 10F/5-6). Julius Bishop, M.D., observed

that the claimant was fully ambulatory without an assistive device although she complained of chronic pain. One examination, the passive motion of her bilateral hips was benign with supple flexion/extension without pain. Her left lower extremity was 5/5 tibialis anterior and she had intact sensation at the L4 and S1. On the right side, the claimant had diminished L5 sensation with intact L4 and S1. She had 4/5 tibialis anterior and significant gastroc equines. Dr. Bishop further stated that no further intervention was necessary for her pelvic ring injury. Dr. Bishop further stated that she had good strength in her tibialis anterior but was limited by equines, which was probably attributable to her foot drop. Dr. Bishop gave her referral to the foot and ankle clinic.

In November 2010, the claimant presented to Mary Biggerstaff, ARNP, at Mark Reed Healthcare Clinic complaining of right mid-back muscle spasms (internal citation to 13F/5-7). On examination, the claimant had a normal gait. She had spasms in her right thoracic paraspinal muscles but she had a full range of motion. Nurse Biggerstaff prescribed Flexeril and recommended stretching exercises.
     . . .
In November of 2011, Nathan Rosenberg, M.D., performed a physical consultative examination of the claimant (internal citation to 16F). The claimant complained of low back pain, hip pain, right ankle pain, and hyper-coagulability since the motor vehicle accident. On examination, Dr. Rosenberg noted that the claimant was able to walk into the examination room without assistance. She was also able to get on and off the exam table without difficulty. Her gait was normal and non-antalgic. She was unable to perform toe-walking and heel-walking due to weakness in the right ankle dorsiflexion and plantar flexion (internal citation to 16F/11). Her lumbar spine was diffusely tender but she had no paravertebral muscle spasms. The claimant's hips were nontender to palpation. Her strength was 5/5 throughout her bilateral upper and lower extremities but there was weakness in her right great toe extension, ankle dorsiflexion, and ankle plantar flexion. She had decreased sensation to light touch in the peroneal nerve distribution on the right.

(Tr. 19-20). The ALJ's discussion supports an improvement in plaintiff's impairments, and inconsistency with disabling severity of limitations as alleged by plaintiff.

Not only does plaintiff bear the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"), *See Bowen v. Yuckert*, 482 U.S. 137, 140,

146 n. 5 (1987); but also, the Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Based on the relevant record, the Court concludes that the ALJ's finding that the objective medical findings are not consistent with the degree of impairment alleged by plaintiff is a finding based on substantial evidence in the record as a whole (*see* Tr. 18; *see also* Tr. 18-20). The Court also concludes that along with the ALJ's finding regarding plaintiff's drug-seeking behavior and inferred exaggeration of pain complaints, the ALJ's discussion of the objective medical evidence provides adequate reasoning for failing to credit fully plaintiff's allegations and testimony.

Even if the ALJ included reasons not properly relied on, the Ninth Circuit has noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina, supra,* 674 F.3d at 1115 (citations omitted). The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Id.* (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v.*

*Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted).

The court noted the necessity to follow the rule that courts must review cases "'without

regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting*

*Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification

of the harmless error rule)).

Here, the ALJ properly relied on plaintiff's drug-seeking behavior, as well as

inconsistency with the objective medical record, to support his failure to credit fully

plaintiff's allegations and testimony. Therefore, the Court finds at most harmless error in

the evaluation of plaintiff's credibility. *See id.*

**(2) Did the ALJ err in adopting the findings of Dr. Rosenberg, while rejecting the opinions of the non-examining physicians?**

Plaintiff complains that the ALJ erred when adopting the opinions of an examining

doctor over the opinions of non-examining doctors, however, generally, an examining

physician's opinion is "entitled to greater weight than the opinion of a nonexamining

physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted); *see*

*also* 20 C.F.R. § 404.1527(d).

Here, the ALJ followed the general rule set forth by the relevant regulations and

the Ninth Circuit, and he provided greater weight to the doctor who examined plaintiff

over the state agency non-examining medical consultants, in part, because of the

examination (*see* Tr. 22-23). Plaintiff contends that the ALJ erred in relying more heavily

on the examining doctor because the non-examining sources had the opportunity to

review records that were not available to the examining doctor (*see* Opening Brief, ECF

No. 16, p. 6). Plaintiff also contends that the non-examining sources "took Plaintiff's susceptibility to clotting and the residual pain into consideration when offering their opinions, [while] Dr. Rosenberg, on the other hand, relied on range of motion and gait testing performed in the course of a fifteen-minute examination in coming to his conclusion" (*see id.*).

Although the examining doctor, Dr. Nathan Rosenberg, M.D., may not have had the opportunity to review all of plaintiff's records, he reviewed plaintiff's Harborview Medical Center discharge summary from July 2, 2009; and, also reviewed "clinic notes from Shane Andrews, M.D., Elma Family Practice, September 10, 2009, September 28, 2009; October 12, 2009; October 25, 2009; March 1, 2010; April 1, 2010; June 14, 2010; August 10, 2010; August 31, 2010; and September 29, 2010" (Tr. 825). In addition, Dr. Rosenberg, unlike the non-examining medical consultants, had the opportunity to examine plaintiff and observe her abilities and limitations first hand (Tr. 818-30). Presumably, this is precisely the reason the Ninth Circuit has held that the opinions of an examining and treating physician are entitled to greater weight than a non-examining, reviewing physician. *See, e.g., Lester v. Chater*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).

The ALJ noted that "Dr. Rosenberg performed a physical examination and reported his findings" (Tr. 23). The ALJ "gave significant weight to this opinion because it was based on an in-person examination and is consistent with his clinical findings, which show that the claimant had a negative straight-leg raising test[;] had diffuse lumbar tenderness but no paravertebral muscle spasms[; and,] [her] strength was 5/5 throughout

1  with some weakness in the right ankle and great toe as well as some sensory changes"

2  (*id.*). The ALJ also noted that plaintiff ambulated without an assistive device (*id.*).

3          For the stated reasons, and based on the relevant record as a whole, the Court

4  concludes that the ALJ did not err in giving the examining doctor's opinion "significant

5  weight" and in utilizing said opinion when formulating plaintiff's residual functional

6  capacity.

7                                    CONCLUSION

8          The ALJ properly relied on the examining doctor's opinion when formulating

9  plaintiff's RFC and did not err when failing to credit fully plaintiff's allegations.

10

11         Based on these reasons and the relevant record, the Court **ORDERS** that this

12  matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

13         **JUDGMENT** should be for defendant and the case should be closed.

14         Dated this 21st day of May, 2014.

15

16                                    _____
                                      J. Richard Creatura
17                                    United States Magistrate Judge

18

19

20

21

22

23

24